Good afternoon, your honors. My name is Sandra Parker. I represent the appellant. And we're in its entirety all of appellant's claims of discrimination under Section 1983 and her claims of discrimination under the New York City Human Rights Law. Excuse me. We believe that the district court incorrectly treated the allegations and the claims alleged in the first amended complaint as rising or falling based on statements made by the head of Dr. Beverly's department concerning African Americans and Caribbean Americans. Beverly's case does not rise or fall based on those comments. The first amended complaint contained ample allegation concerning the fact that the defendants subjected her to materially adverse action. The materially adverse action to which Beverly was subjected, standing alone without the remarks concerning African Americans and Caribbean Americans were sufficient to meet the test of adverse action at the pleading stage in response to the appellee's motion to dismiss pursuant to Rule 12B-6. They're materially adverse in three respects. First, they interfered with Dr. Beverly's ability to perform her duties. They disadvantaged Dr. Beverly, and they significantly diminished her responsibility. Among the conduct to which she was subjected to, which we submit were materially adverse, are the denial of an assistant, the two-tier reporting requirement that she was subjected to, being excluded from meetings concerning projects on which she signed to perform, being excluded from staff meetings, being excluded from communication with other managers in the department, the denial of a raise in a promotion, the demand that she resign, her subsequent termination, and following that, disparaging her to prospective employers. So for that reason, we believe that the district court was in error when it concluded that Beverly was not subject to materially adverse action by the defendants. The next area, which we believe the district court committed error, dealt with the inference of discrimination. And in this case, Beverly relied on a similarly situated test to meet this prong of her complaint. Now, with regard to the similarly situated test, that's generally a case-specific test. And not all factors are important in every case. It all depends on the nature of the conduct that the defendants are alleged to have engaged in. In this case, I've provided you a list of some of the conduct in which they engaged. And so with regard to the conduct that I've listed, the factors that are important are, one, the fact that she reported to the same manager, she was in the same department, and the individuals with whom she compared herself had the same title or position. And we believe that we met that test, but the court differed in regard to that issue, in that it required Beverly at the pleading stage to identify the experience, the educational background, and other factors which were not relevant to the type of conduct that she was alleging was discriminatory. Certainly, the educational background or the work experience of the Caucasian managers who held the same title as Beverly, who were not subject to the same treatment that I've just described, was not relevant to any of that treatment. Beverly was subjected to the treatment that I've just described, irrespective of the education, experience, and job responsibilities. They played no role in that. Now, with regard to Beverly's retaliation claim, the respondents advanced new arguments that were not presented below, which should ignore. With regard to the retaliation claim, we indicated that, in fact, there were certain facts and information that we could supplement with regard to any deficiencies that there might have been in the first amended complaint. And that also occurred with regard to the failure to promote and failure to raise. And under those circumstances, we believe that the court should have permitted plaintiffs leave to appeal and cure those deficiencies. With regard to the New York City human rights claim, since it's a lower threshold, we have indicated or demonstrated that she does allege viable claims of discrimination and retaliation. And having met the Section 1983 level, we believe it follows that under the lower or less stringent standard of the New York City human rights statute that she also meets that standard. The only outstanding issue under the New York City human rights claim is the hostile work environment, which she does not allege until 1983. And the severe and pervasive standard applicable to the federal claims does not apply to the New York City human rights claim. Finally, with regard to the Monell claim, the appellees advanced new and novel arguments that were not advanced at the district court level, such as the individual defendants were not final policy makers or that Dr. Beverly failed to show that they ratified her manager's conduct. We believe that the court should not entertain those new arguments. Thank you very much. You've reserved some time. Yes, I have. Thank you, Your Honor. Thank you. Judge Kears, any questions for Ms. Parker? Yes, I'd like to ask about what the district court said in response to the motion for reconsideration that was filed by plaintiffs after this appeal was taken. Yes, Your Honor. Is it correct that the court has indicated that the dismissal of the complaint was without prejudice and that the court would allow plaintiffs to file an amended complaint? That's correct, Your Honor. I believe that both sides operated under the assumption and the incorrect assumption that the dismissal by the district court was without prejudice. And I believe in a decision that came down in September, I believe, perhaps, the district court did indicate and make clear that it was without prejudice and that indeed it would permit Dr. Beverly to amend her complaint because based on some of the arguments advanced, it did not appear that amendment would be futile. So that's correct, Your Honor. Thank you. Judge Pooler, any questions? Yes, I do have some. Thank you. If you have the right to amend, why did you bring this appeal? Well, we filed the appeal before the decision came down. And certainly, we had at least the possible option of withdrawing the appeal. But given the posture of the case, particularly since in the reconsideration decision, Judge Ramos specifically indicated he would await resolution of the appeal before any steps would be taken. At least that's my reading of the reconsideration decision. He would await resolution of the appeal. We move forward with it as it stood. And that's the reason for Dr. Beverly's position with regard to the appeal. Counsel, the only comment that you ascribe to Dr. Beverly's colleague was the one, I forget who made it, that he didn't understand. He had no affinity for African-American life. Could you explain why that's not just a stray remark? Well, Your Honor, I don't disagree that it's not a stray remark. What I disagreed with in terms of the decision below is that Dr. Beverly's case rose or fell based on those remarks. And what we tried to argue on this appeal or indicate is that putting aside whether they're stray remarks or not, putting aside those remarks, there is ample evidence, there are ample allegations in the First Amendment complaint of materially adverse action. And in addition to that, we cited a case, I don't have the specific site here, coming out of the Second Circuit, which says stray remarks alone are not sufficient, but stray remarks when coupled with other indices of discriminatory or treatment may be sufficient. And under those circumstances, the stray remarks don't remain stray remarks, but they're an indication of discriminatory feelings towards the employee. Did you cite that case about stray remarks? It wasn't your brief? I believe it was. I believe it was in the... Jerome Blackburn. See if I can find it. We have a situation. Hello, I'm in court. I'll call you back. I'll go on because we do have precedent in the Second Circuit that says that stray remarks, even if made by a decision maker, do not constitute sufficient evidence to make out a case of employment discrimination. And it is no allegation that this remark was made by a decision maker, is there? Yes, well, her manager was the one who made the decision to create the two-tier system. He was the decision maker with regard to most of the adverse action to which she was subjected to. It may be in my reply brief, but I do know that I did quote extensively from that. Okay, well, you've reserved three minutes for rebuttal. So when you take the podium again, why don't you point me to the place in your brief where you discuss it? I will. Thank you, Your Honor. Thank you, Ms. Parker. This is Judge Cabranes. I want to go back to the procedural stance of this case, which Judge Kearse adverted to. The district court dismissed your complaint and requests to replead without prejudice. Is that right? Well, the district court was implicit in that decision, yes, because it did not address the issue at all. It dismissed the case and closed out the file. So in this case, it's tails you win and heads you win, right? That is, you can't lose this appeal on your theory. Because if you do not prevail, then somehow you have a right to go back to Judge Ramos and ask him to amend. Is that right? Based on his reconsideration decision, but that's a posture. That's all right. No buts. Is it correct that if you do not prevail before us, you then believe that you're entitled to go back to the district court and ask for an amendment of your complaint so that you can, as it were, begin anew? I do believe that, Your Honor. Okay. Thank you. All right, we'll hear from Mr. Shapiro. And similarly, with respect to the comparison to other individuals, she failed to plausibly plead that she was similarly situated to those individuals in all material respect. Whereas she had a background in medicine, Mellican had a background in law, and Katz had a background in education. Whereas she focused on medical necessities, denials, and appeals, Covino focused on budget matters. Whereas she had the title of assistant vice president, Mellican and Covino had the title of director. Whereas she worked in finance, she also worked in the IT department. She said no light on Mellican and Katz's job responsibilities or Molson's and Meagher's roles. So, she has really not shown how Beverly was similarly situated in any material respect, let alone all of them. So, on that failure to plead discriminatory animus alone defeats those claims. But in addition, she independently failed to plausibly plead that she suffered adverse or disadvantageous conduct. And on that, I would direct the court's attention to the Fleming decision, which is, in that case, the conduct was a racially offensive comment, exclusion from meetings, refusal to answer questions, excessive criticism, sending of rude emails. And that wasn't enough. And so, similarly here, she hasn't shown that she suffered anything more than petty slights or trivial inconveniences. For the first time at argument, she now points to her termination. But if you look at her briefing on appeal, at no point does Beverly claim that termination was discriminatory. She identifies it as the basis for her retaliation claim. And for example, in her reply brief, she sends 10 pages on laying out allegedly adverse conduct and never once mentions termination. So, moving on to the retaliation claim, Beverly has similarly failed to plausibly plead that claim because she hasn't shown that she engaged in protected activity. Her complaint doesn't give any indication about what she actually said to Anand Dharam that supposedly constituted a complaint about unlawful discrimination. And I understand counsel to now be saying that we're raising that argument for the first time on appeal, but that's exactly the ground that we argued below in our briefing and that one of the grounds that the district court relied on. And more than that, to the extent that she identifies blackballing and disparaging as retaliatory conduct, she hasn't given any indication about what defendants allegedly said to whom that she even applied for another job and didn't receive it. As for her city human rights law claims, in addition to those grounds and the additional ones laid out in our brief, she has failed, she has waived them by failing to actually give argument with legal authority and record citation in her brief. And it's actually very similar to what happened in the Chabad case where the party in that case had separate sections where they identified what the district court's ruling was and I think pretty clearly disagreed with it, but that's not enough to set out an argument. As for the questioning about Beverly's repleading, just to clarify one issue, as I understand the district court's reconsideration decision, he wasn't saying that Beverly definitely had a right to replead, he said that he would entertain a motion on that and that defendants would, of course, have an opportunity to do so. And I think one ground in particular would be that Beverly has failed to give any indication about how she would supplement her allegations of discriminatory animus. So we make additional arguments in our brief, but with that, I'd be happy to answer any of your honors questions. Thanks, Mr. Shapiro. Judge Kears, any questions for Mr. Shapiro? No questions, thank you. Judge Pooler, any questions for Mr. Shapiro? I have one question, thank you. You say that opposing counsel did not give any indication of what she would include in an amended complaint, is that correct? There was an argument that they would add an allegation that she applied for a promotion, which would go to adverse conduct. To be clear, I was saying that she didn't give an indication about what she would add to the discriminatory animus prong, which is an independent grounds for dismissal. Thank you. Mr. Shapiro, I take it it's your view that in the current posture of this case, the judgment that we are meant to review is a judgment without prejudice, is that right? Yeah, that is true. Okay, thank you. All right, Ms. Parker has reserved some time. Maybe she can address this curiosity for us. Your Honor, when you say curiosity, I'm not sure. It's a little unusual, isn't it, for us to be reviewing judgments that were entered without prejudice. Well, it is unusual, Your Honor, and I admit that I feel to be in an unusual posture in that I think by all accounts, based on the arguments advanced from the other side as well, the appellees, they assume that it was with prejudice and it was not until the motion for reconsideration was filed and after a decision was rendered that we discovered that. So it is an unusual situation for the appellant as well, and I admit that. So let's assume for the argument that you prevail. Where does that leave us? What kind of decree would we enter? Well, there are two forms of relief that we're seeking on this appeal. One aspect of that relief is the proposition that the first amended complaint has alleged viable claims, which should not have been dismissed at the pleading stage. And or alternatively, if there are any deficiencies with respect to those claims, we should have been granted leave to amend. And in fact, an indication of appellant's belief that it was a dismissal with prejudice is the fact that we pursued this appeal with the assumption that, in fact, we were foreclosed from curing any deficiencies and specifically asked for that relief. So if we proceed on the assumption that this judgment was with prejudice, you have no objection to that. I'm not suggesting that which side would prevail, but if we if we proceed. On the assumption that this is a judgment. With prejudice, you have any objection to that. Well, I I I wouldn't put it in terms of an objection, but I would say that. It would be preferable if it was treated as a judgment without prejudice so that we would be permitted to cure any deficiencies that exist with regard to the first amended complaint. In that our our goal in terms of pursuing the appeal is to provide Dr. Beverly with an opportunity to present her claims, present facts and circumstances which supported she based on the assumption that it was a dismissal with prejudice. She felt that she was deprived of that opportunity and that that is the main goal. So perhaps I'm dancing around it, but I think a judgment without prejudice would be preferable. Your honor. Thank you very much. All right. Either of my colleagues have any questions, any further questions for this partner? No, I was here. I have a question. All right. You have no questions. I'm sorry. Should should I answer the to the the the the question from Judge Pooler? Yes, of course. OK, Judge Pooler, you asked about the stray remarks. I would point you to page five of Dr. Beverly's reply brief and it goes into page six. And. They cite a case that the appellee cite Mohan versus city of New York. I will look at those pages in the short time remaining. I would like you to tell me what additional evidence you can muster to approve discriminatory animus, which is where a separate ground that the district court dismissed your case. No evidence of discriminatory animus. The district court reached that conclusion based on the similarly situated test that we that on which we relied to to show an inference of discrimination. And if permitted to amend the complaint, we believe that we can come forward with additional facts and circumstances in that area. In addition to that, I would point your honor to the Second Circuit case in Abu Brisson versus Delta Air Line, which in part stands for the proposition that in certain circumstances, the similarly situated test may not be available. Let's. And under those circumstances, there are other indices of discriminatory animus, such as what exactly was done. And we believe that if given the opportunity to do so, we can articulate in more detail what was done to Dr. Beverly. Did you draft a second amended complaint to attach to your request for permission to file it? Did I? Yes. No, no, no, we did not. Thank you. OK. Thanks very much. Thank you, your honors. Thank you. We'll reserve decision. In twenty dash thirteen ninety nine Beverly versus New York City Health and Hospitals Corporation.